MELVIN NOVIKOFF and SUSAN NOVIKOFF, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Novikoff v. Commissioner
Docket No. 13341-78.
United States Tax Court
T.C. Memo 1980-330; 1980 Tax Ct. Memo LEXIS 251; 40 T.C.M. (CCH) 1039; T.C.M. (RIA) 80330; August 25, 1980, Filed Jerry J. Goldstein, for the petitioners. Milton B. Blouke, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $4,051 deficiency in petitioners' 1976 income tax. The sole issue for decision is whether capital was a material income-producing factor in petitioner's movie theater business. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Melvin ("petitioner") and Susan Novikoff [1] resided in San Francisco, California at the time their petition in this case was filed. Petitioner became involved in the movie theater business in 1961 when he purchased the Surf Theatre. In 1976 [2] petitioner still owned the Surf Theatre and leased the Clay Theatre (since 1973), *254 the Lumiere Theatre (since January 1975), and the Castro Theatre (since August 1976). These theaters are collectively known as the Surf Theatres.
The gross receipts of the four theaters in San Francisco for 1976 were $1,064,674. Petitioners reported net income on their 1976 income tax return (Form 1040) from the theater business of $110,510. [3]
Petitioner's cost basis in the Surf Theatre was $29,000. Lease rentals for the Clay, Lumiere and Castro Theatres amounted to a total of $41,877 in 1976. Investments in plant and equipment during *255 1976 were $236,294.59, and depreciation allowed was $17,656. Other significant expenses during 1976 included film rentals ($427,566), cost of other goods sold ($39,613), salaries and wages ($197,472), advertising ($98,353), business and property taxes ($31,424), theater supplies ($22,701), telephone ($11,885), and repairs ($9,000). Surf Theatres is an independent movie theater operation. As a result, it lacks the buying power, preferential treatment or other ability to spread risks normally associated with major movie theater chains. These theaters feature films not traditionally shown in theaters owned by major chains, such as older films and foreign films. Petitioner does show first run commercial films in his theaters when he is able to obtain them. Promoting public interest in these films is crucial to the successful operation of the Surf Theatres. Petitioner utilizes a number of techniques to create this requisite public interest, including unique advertising and special programming of types of films (i.e., foreign film festivals or a series of films featuring a particular actor or actress, producer, era, studio, etc.). Generally, petitioner's theaters showed significantly *256 improved financial success under petitioner's ownership. [4] This success is attributable to petitioner's choice of movies, the manner in which the special programs are arranged, the special promotion and petitioner's personal approach to the theaters' operation. Petitioner devotes extensive time to his theater business. In addition to a fairly normal working day, petitioner spends part of most evenings at work screening films or reviewing motion picture publications. Each year petitioner attends film festivals throughout the world. In 1976 he attended the Cannes Film Festival, the New York Film Festival, the San Francisco Film Festival, and the Telluride, Colorado Film Festival. In addition to the films petitioner screens at these festivals, he screens a minimum of three films a week at his theaters. In total, petitioner screened approximately *257 400 films in 1976. Petitioner enjoys an excellent reputation in the motion picture industry. He is known as an individual whose personal touch in selecting picture films results in a high degree of success. In 1976 petitioner treated the entire net profit from his movie theater business as earned income subject to the 50 percent maximum tax. See sec. 1348. [5] In his statutory notice, respondent determined that the income from the theaters did not qualify for the maximum tax because capital was a material income-producing factor in this movie theater business. OPINION The sole issue presented is whether petitioner's 1976 income from the Surf Theatres was earned income within the meaning of section 1348. Petitioner asserts that such income is earned income and qualifies for the 50 percent maximum tax under section 1348(a). On the other hand, respondent argues that capital is a material income-producing factor in petitioner's business, and therefore a maximum of 30 percent of the income from such business may be considered earned income for purposes of section *258 1348, and we agree. Section 1348 [6] provides for a maximum marginal tax rate of 50 percent on earned taxable income. "Earned income" is defined in section 1348(b), with certain exceptions not relevant here, as "earned income within the meaning of section 401(c)(2)(C) or section 911(b)…" Section 401(c)(2)(C) deals with income from the sale or disposition of property created by the taxpayer and is not relevant to this proceeding. Section 911(b) provides: *259 (b) Definition of Earned Income.--For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary or his delegate, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income. Very few cases to date have dealt with the question of whether capital is a material income-producing factor for purposes of section 1348. See Bruno v. Commissioner,71 T.C. 191 (1978); Moore v. Commissioner,71 T.C. 533 (1979). There are, however, *260 numerous cases addressing this question under other code provisions. [7] In this case respondent bases his position primarily on section 1.1348-3(a)(3)(ii), Income Tax Regs.[8]
*261 Generally, capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business. Bruno v. Commissioner,supra at 199; sec. 1.1348-3(a)(3)(ii), Income Tax Regs. This may be reflected by a substantial investment in inventories, plant, machinery or other equipment. Id. Respondent argues that petitioner has a substantial investment in inventories, plant, machinery and other equipment. In 1976 petitioner's investment in plant and equipment was $236,294.59. Lease payments for the Clay, Lumiere and Castro Theatres totaled $41,877. Leased property, too, constitutes capital. Moore v. Commissioner,supra at 539. Film rentals amounted to $427,566. Petitioner also had a capital investment in its inventory of items sold at concession stands. [9]
Petitioner's substantial investment in capital is only reflective and not determinative of the fact that capital is a material income-producing *262 factor. Sec. 1.1348-3(a)(ii), Income Tax Regs. It must also be shown that a substantial portion of the gross income of petitioner's business is attributable to the employment of such capital. Petitioner's gross income is derived from two sources: admission charges and sales of refreshments from concession stands. These sources of income substantially depend on the employment of capital in petitioner's business.The average value of petitioner's inventory in concession items is capital. In addition, the space used to sell these items as well as the equipment used (e.g., stands, soda machines, cash registers, etc.) constitute capital investments. The theaters where the movies are shown, as well as the apparatus used to display the movies, are all capital in nature.Accordingly, capital is a material income-producing factor in petitioner's movie theater business. Like respondent, petitioner based his position on section 1.1348-3(a)(3)(ii), Income Tax Regs. Petitioner correctly states that generally capital is not a material income-producing factor where the gross income of the business consists principally of fees, commissions, or other compensation paid for personal services *263 rendered by an individual. Bruno v. Commissioner,supra. This is true despite the fact that the taxpayer has a substantial investment in capital. See example (3) from section 1.1348-3(a)(6), Income Tax Regs.[10]
Petitioner here argues that his personal services rendered to Surf Theatres are principally responsible for the successful operation of the theaters. We have no doubt that this is true. It does not follow, however, that because petitioner successfully renders essential personal services to his business that such business is a personal services business. To qualify as a personal services business petitioner must show that his gross income consists principally of fees, commissions or other compensation for personal services *264 performed by an individual. Bruno v. Commissioner,supra.The payments petitioner received were not in exchange for personal services rendered by him. Rather, the admission charges were paid for the right to watch a movie and the revenue from the concession stands was directly attributable to the sale of goods. This Court in Moore v. Commissioner,supra, addressed an argument similar to petitioner's. There the taxpayers established that their personal efforts contributed largely to the success of their grocery store business. We stated in that case: Petitioners' services in retailing are also a material income-producing factor but are inseparable from the inventory purchased by its customers. The gross income of their business came entirely from the price paid for its groceries, not from any fees, commissions, or other compensation paid directly for personal services. Id. at 539. The taxpayers in Moore requested this Court to differentiate between their grocery store and grocery stores in general on the basis of the efficient operation of their store resulting from their personal services. We refused to do *265 so, stating: Under this test [sec. 1.1348-3(a)(3)(ii), Income Tax Regs.], it is our view that all retail grocery businesses employ capital as a material income-producing factor. We will not differentiate among retail groceries on the basis of how profitably they are operated. Id. at 540. Petitioner in this case makes a similar argument by attempting to distinguish between major movie theater chains and independent movie theaters. We do not accept this distinction. Admittedly, the major chains have advantages over independents and the success or failure of an independent depends much more heavily on the expertise and personal involvement of its operator. Nevertheless, we conclude that all motion picture theaters whether owned by a major chain or independent, utilize capital as a material income-producing factor for purposes of section 1348. We acknowledge that petitioner's judgment in choosing movies based upon his years of experience, his respectability in the motion picture industry, his standards and exhaustive research in choosing films, his professional acumen and his managerial ability in the effective development and growth of Surf Theatres have *266 been critical to his success. But this is not enough to find that petitioner's business does not utilize capital as a material income-producing factor. Petitioner's business is more akin to one selling products than to one rendering personal services, and capital is a material income-producing factor in his business. Decision will be entered for the respondent.
Footnotes
1. Susan Novikoff is a petitioner solely by virtue of having filed a joint return with her husband Melvin.↩
2. Although the tax year in dispute is the entire calendar year 1976, the current dispute only involves the period January 1, 1976 through October 30, 1976, because petitioner incorporated his theater operations on October 31, 1976. Consequently, reference to the year 1976 in this opinion will mean the period from January 1, 1976 through October 30, 1976.↩
3. It appears that both parties have agreed to changes in that amount, but the record does not reflect what those changes are. For purposes of this opinion, however, it is sufficient to note that petitioner's net profit from the movie theater business was approximately $110,510.↩
4. Petitioner was not always successful in turning an unprofitable theater into a profitable theater. In 1977, for example, he acquired the Stage Door Theatre in San Francisco. Because of the theater's location and petitioner's inability to obtain first run films, he was unable to make a profit and subsequently disposed of the theater.↩
5. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
6. Section 1348 provides: (a) General Rule.--If for any taxable year an individual has earned taxable income which exceeds the amount of taxable income specified in paragraph (1), the tax imposed by section 1 for such year shall, unless the taxpayer chooses the benefits of part I (relating to income averaging), be the sum of (1) the tax imposed by section 1 on the lowest amount of taxable income on which the rate of tax under section 1 exceeds 50 percent, (2) 50 percent of the amount by which his earned taxable income exceeds the lowest amount of taxable income on which the rate of tax under section 1 exceeds 50 percent, and (3) The excess of the tax computed under section 1 without regard to this section over the tax so computed with reference solely to his earned taxable income. In applying this subsection to a taxable year beginning after December 31, 1970, and before January 1, 1972, "60 percent" shall be substituted for "50 percent" each place it appears in paragraphs (1) and (2). (b) Definitions.--For purposes of this section (1) Earned income.--The term "earned income" means any income which is earned income within the meaning of section 401(c)(2)(C) or section 911(b), except that such term does not include any distribution to which section 72(m)(5), 402(a)(2), 402(e), or 403(a)(2)(A) applies or any deferred compensation within the meaning of section 404. For purposes of this paragraph, deferred compensation does not include any amount received before the end of the taxable year following the first taxable year of the recipient in which his right to receive such amount is not subject to a substantial risk of forfeiture (within the meaning of section 83(c)(1)). (2) Earned taxable income--The earned taxable income of an individual is the excess of (A) the amount which bears the same ratio (but not in excess of 100 percent) to his taxable income as his earned net income bears to his adjusted gross income, over (B) the amount by which the greater of (i) one-fifth of the sum of the taxpayer's items of tax preference referred to in section 57 for the taxable year and the 4 preceding taxable years, or (ii) the sum of the items of tax preference for the taxable year, exceeds $30,000. For purposes of subparagraph (A), the term "earned net income" means earned income reduced by any deduction allowable under section 62 which are properly allocable to or chargeable against such earned income.
(c) Married Individuals.--This section shall apply to a married individual only if such individual and his spouse make a single return jointly for the taxable year.↩
7. Examples of other 1954 Code provisions dealing with analogous language are sections 37(e), 911(b), 704(e)(1) and 1361(b)(4) (repealed). In addition, section 200 of the Revenue Act of 1918, 40 Stat. 1059, section 200 of the Revenue Act of 1920, 42 Stat. 228, and section 25(a)(4) of the 1939 Code also deal with the concept of capital as a material income-producing factor. See Miller v. Commissioner,51 T.C. 755, 759↩ (1969). 8. Section 1.1348-3(a)(3)(ii), Income Tax Regs., provides: (ii) Whether capital is a material income-producing factor must be determined by reference to all the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business, as reflected, for example, by a substantial investment in inventories, plant, machinery, or other equipment. In general, capital is not a material income-producing factor where gross income of the business consists principally of fees, commissions, or other compensation for personal services performed by an individual. Thus, the practice of his profession by a doctor, dentist, lawyer, architect, or accountant will not, as such, be treated as a trade or business in which capital is a material income-producing factor even though the practitioner may have a substantial capital investment in professional equipment or in the physical plant constituting the office from which he conducts his practice since his capital investment is regarded as only incidental to his professional practice. Note that sections 1.1348-1 through 1.1348-3, Income Tax Regs.↩, were proposed on December 15, 1971, and adopted on December 17, 1976.
9. The record does not reflect what petitioner's average cost of inventory of concession items was. Whatever the amount, however, it is capital in nature.↩
10. Section 1.1348-3(a)(6), Example (3), Income Tax Regs., provides in part: The entire $100x of professional fees earned by A during 1973 is treated as earned income, notwithstanding that A has a substantial capital investment in professional equipment and the office from which he conducts his medical practice, because such capital investment is only incidental to the rendition of personal services in A's professional practice.↩