**Phillip Morris ROGERS and Phillip Resnick, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 4–80–250.**

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 10, 1980.

tion proceeding brought against plaintiff Rogers by defendant United States, challenging the amount of tax assessed against Rogers in that proceeding, and seeking a ruling that an assignment of certain goods and money from Rogers to plaintiff Resnick has priority over a tax lien filed on those goods and money. Jurisdiction is alleged under 26 U.S.C. §§ 6851, 7426, and 7429. Both sides have now moved for determination of the issues concerning the termination assessment, and for summary judgment on the issue of the priority of the tax lien.

Based on the affidavits and exhibits submitted by the parties, the facts are as follows: On February 14, 1980, plaintiff Rogers was arrested by the United States Drug Enforcement Administration ["DEA"] for trafficking in controlled substances. At the time of Rogers' arrest, DEA officers seized property and cash from Rogers. On February 18, 1980, Rogers sought to assign all his rights to certain seized property and cash to plaintiff Resnick, his attorney, to secure payment of legal fees incurred in defense of the charges resulting from his arrest. Resnick alleges that he served notice of this assignment on officers of the DEA on February 18, 1980. The affidavit of Officer John Boulger, however, indicates that no such notice was received until February 19, 1980.

On February 19, 1980, the Internal Revenue Service ["IRS"] made a jeopardy termination assessment of Rogers' tax liability in the amount of $92,366.00. By affidavit, Revenue Agent Henry J. Langer indicates that the jeopardy termination assessment was made on the basis of his information that Rogers was trafficking in drugs, that he had a large sum of cash, and that he had not filed a tax return since 1977. Langer's affidavit states that his computation of Rogers' income was based on records seized from him at the time of his arrest that showed he had received taxable income in the amount of $160,684.00 from his sales of marijuana and cocaine for the period from January 1, 1980, to February 14, 1980. Upon Rogers' refusal or failure to pay the

Louis D. Bass, Minneapolis, Minn., for plaintiffs.

Mary Frances Clark, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiffs bring this action challenging the reasonableness of a jeopardy termina-

tax, the IRS served a notice of levy on the DEA on February 19, 1980, attaching the property and money seized from Rogers by the DEA. The IRS has afforded Rogers the necessary notice and right to administrative review of the termination assessment.

### 1. The Termination Assessment

■ The Internal Revenue Code authorizes the Secretary of the IRS to assess a tax immediately due for the current year if he finds that a taxpayer "designs quickly to depart from the United States or to remove his property therefrom or to conceal himself or his property therein, or to do any act . . . tending to prejudice or render wholly or partially ineffectual proceedings to collect the income tax for the current . . . taxable year unless such proceeding be brought without delay." 26 U.S.C. § 6851. A taxpayer has the right to have such action by the IRS reviewed by a United States District Court. 26 U.S.C. § 7429(b). On review, the court is to determine (1) whether making of the termination assessment was reasonable and (2) whether the amount assessed was appropriate. 26 U.S.C. § 7429(b)(2). The government has the burden of proof on the issue of the reasonableness of making the termination assessment, and the taxpayer has the burden of proof on the issue of the appropriateness of the amount. 26 U.S.C. § 7429(g).

The district court's determination of these matters is not reviewable. 26 U.S.C. § 7429(f). The ultimate issue of tax liability is, however, to be decided in an action by the taxpayer for refund or in a proceeding in the Tax Court, if the taxpayer disputes the amount of the assessment. See S.Rep. No.94–938 (part I), 94th Cong.2d Sess. 365 (1976), reprinted in [1976] U.S.Code & Admin.News, 3439, 3795. See also Loretto v. United States, 440 F.Supp. 1168, 1175 (E.D. Pa.1977). Thus, the decision of this court does not go to Rogers' ultimate tax liability, but only to the reasonableness of the termination assessment and the amount thereof.

■ The government has met its burden of showing that the termination assessment was reasonable. The facts set out in Agent Langer's affidavit regarding Rogers' apparent means of making a living, the large amount of cash he had access to, and his past failure to file income tax returns indicate that it was reasonable for the IRS to conclude that termination proceedings were necessary. Rogers' attempt to assign his assets to Resnick underscores this point.

■ The record further indicates that the amount of the assessment was appropriate. The government has produced the affidavit of its revenue agent setting out the materials the agent used to compute the tax and explaining the method used to compute the tax. Plaintiffs have only offered bare allegations in their complaint that the amount assessed was inappropriate and have, therefore, failed to satisfy their burden of proof.

For these reasons, the government is entitled to a ruling that the making of the termination assessment was reasonable and that the amount of the assessment was appropriate.

### 2. The Priority of the Tax Lien

The plaintiffs contend that because on February 18, 1980, Resnick personally gave DEA agents notice of his assignment of goods and money from Rogers, and because the DEA was bailee of the goods, his lien was properly perfected under Minn.Stat. § 336.9–305, which allows perfection of interests in money and goods by notifying the bailee holding the money or goods of a person's security interest therein. Thus, plaintiffs conclude that under the provisions of 26 U.S.C. § 6323 Resnick's interest was perfected before the tax lien was filed on February 19, 1980, and, therefore, has priority over the tax lien.

The government disputes this, claiming that its lien has priority because (1) the assignment by Rogers to Resnick represented an assignment of a claim against the United States which is prohibited by the Assignment of Claims Act, 31 U.S.C. § 203, (2) the assignment to Resnick was for a claim and not for the goods and money themselves, so the interest assigned was in

a general intangible which, under the provisions of Minn.Stat. § 336.9–106, must be filed to take priority, and (3) Resnick did not part with "money or money's worth" in exchange for the assignment as required by 26 U.S.C. § 6323(h)(1).

Both parties have moved for summary judgment on the issue of the priority of the tax lien and assignment.

■ An affidavit submitted by the government to supplement the record, without objection by the plaintiffs, indicates that plaintiffs' motion for summary judgment must fail. The affidavit suggests that notice of Rogers' assignment to Resnick was not given to the DEA until February 19, 1980, instead of on February 18, as Resnick claims. This creates an issue of material fact that goes directly to Resnick's claim of priority.

The dispute concerning the time the DEA was given notice of the assignment does not, however, preclude summary judgment for the government. Each of the government's grounds supporting its motion for summary judgment, if found to have merit by this court, would entitle the government to summary judgment whether or not Resnick's lien was perfected under Minnesota law on February 18, 1980. Each of these grounds is considered below.

a. *The Assignment of Claims Act*

■ The government argues that Rogers' attempted assignment of property and money seized from him by the DEA is forbidden by the Assignment of Claims Act, 31 U.S.C. § 203. The Act provides that

all transfers and assignments of any claim upon the United States, or of any part or share thereof, or interest therein ... shall be absolutely null and void, unless made ... after allowance of such a claim, ... the ascertainment of the amount due and the issuing of a warrant for payment thereof.
31 U.S.C. § 203.

Here, these requirements have not been met.

The government contends that the rights of Rogers to the money and property assigned to Resnick represented a mere claim because the money and property were seized from Rogers by the DEA in conformity with 21 U.S.C. § 881(a). That section states:

The following shall be subject to forfeiture to the United States and no property right shall exist in them ...

(6) all moneys ... or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used to facilitate any violation of this subchapter ...

21 U.S.C. § 881

The government concludes that because under § 881(a) Rogers had no property right in the things seized from him, he merely had a claim to them which the Assignment of Claims Act did not allow him to assign to Resnick.

For this proposition the government relies principally on *Fisher v. United States*, 40 AFTR 2d 77–5069 (E.D.N.Y.1977).[1] In *Fisher* money was seized from the plaintiff under 31 U.S.C. § 1102, which provides for forfeiture of money seized for violation of the reporting requirements of the Currency and Foreign Transactions chapter of Title 31. After the seizure, plaintiff attempted to assign his rights to the seized currency to his attorney. The court held that even though forfeiture proceedings had not been completed, the Assignment of Claims Act barred the assignment because allowing assignment in such a situation would frustrate the Act's purpose of eliminating conflicting claims against the United States. 40 AFTR 2d at 77–5072.

1. The government also relies on *O'Reilly v. United States*, 486 F.2d 208, 210 (8th Cir. 1973), which holds that, for purposes of search and seizure, forfeiture takes place at the time of the illegal use. The case does not, however, consider forfeiture in the context of the Assignment of Claims Act, and thus provides little guidance in the present case.

The *Fisher* holding does not control in the present case. In *Fisher* the seizures were of the very currency the transportation of which should have been reported under the statute there involved, and which under that statute was subject to forfeiture. In the present case, the goods and money seized were not contraband per se but were allegedly derived from the sale of contraband. In such a case the standard for determining forfeiture is quite strict. As the court noted in *United States v. One 1972 Datsun*, 378 F.Supp. 1200, 1206 (D.N.H. 1974),

> it is important to require that derivative contraband be substantially and instrumentally connected with illegal behavior before it is subject to forfeiture. Otherwise the government, by electing to proceed against suspects via the forfeiture route, could deprive citizens of the constitutionally mandated safeguards which surround the criminal process.

Following this requirement, the court held that a car which was not shown to be instrumental in the defendant's illegal sale of L.S.D. was not subject to forfeiture under 21 U.S.C. § 881.

In the present case there has been no showing of close connection between the money and property seized from Rogers and the drug-related crimes for which he was arrested. This court has not been informed of the results of any forfeiture proceedings which resolve the issue of the connection of the money and property to Rogers' alleged illegal activities. On this motion for summary judgment it would deprive Rogers of the constitutionally mandated safeguards surrounding the criminal process to assume that forfeiture is proper on this record and that because of such forfeiture Rogers has no property right in the money and property seized from him. *Cf. United States v. $22,993.00 in Currency*, 332 F.Supp. 1277, 1279 (E.D.La.1971) (where property seized for violation of internal revenue laws was not contraband forfeitable per se, held original owners of property could assign it without complying with Assignment of Claims Act).

In short, the policy of the Assignment of Claims Act that potentially conflicting claims against the United States should be avoided must, in this case, give way to the Rogers' rights to fair process under the criminal law. Therefore, the Assignment of Claims Act should not be held to bar the assignment to Resnick.

b. *The Mode of Perfecting the Interest in the Assignment*

■ The government argues that because Rogers' interest was merely a claim to the property and money seized by the DEA and not to the property or money itself, Resnick's interest could not be perfected by delivering notice to the DEA as bailee, but instead should have been perfected by filing under Minn.Stat. § 336.9–302 because it is a general intangible under the provisions of Minn.Stat. § 336.9–106. Because no filing was made the IRS claims its lien is superior to Resnick's assignment.

In light of the discussion in part a, above, the government's argument must be rejected. Because forfeiture had not yet taken place at the time of the assignment, Rogers' interest was in the seized property and money and was not merely a claim. Assignment of this interest could be perfected by delivery of notice of the assignment to the DEA as bailee. *See* Minn.Stat. § 336.9–305. *Cf. City of Saint Paul v. Myles*, 298 Minn. 298, 300, n.1, 218 N.W.2d 697, 699, n.1 (1974) (impoundment of vehicle creates bailment of all vehicle's contents with impounding authorities).

c. *"Money's Worth"*

■ For a security interest created by state law to take priority over a federal tax lien, in addition to being perfected before the tax lien and being protected under local law against a subsequent judgment lien arising out of an unsecured transaction, the holder must have parted with "money or money's worth." 26 U.S.C. § 6323(a) and (h)(1). *See also United States v. Trigg*, 465 F.2d 1264, 1269–70 (8th Cir. 1972). The government argues that their lien should take priority because there is no evidence

that Resnick actually performed legal services for Rogers and therefore no showing that Resnick parted with money or money's worth.

The government's argument must fail. Viewing the evidence in a light most favorable to the plaintiffs, as this court must on this motion for summary judgment, it cannot be concluded that Resnick did not part with money or money's worth. The record contains a retainer agreement Rogers signed in the Hennepin County Jail on February 15, 1980. This shows that Resnick gave some services to Rogers, and the existence of the retainer agreement implies that he was obligated to perform more services in the future if necessary. The assignment of goods and money executed by Rogers indicates that the assigned money and property were to be "by way of attorney's fees and costs." The record, therefore, shows that Resnick performed some services for Rogers and had probably promised to perform more in the future. On this record a conclusion that Resnick did not part with money's worth would be unwarranted.

For the reasons discussed above, the government's motion for summary judgment on the issue of priority of the tax lien must be denied. The plaintiffs' motion for summary judgment on that issue must also be denied because a dispute of material fact relating to that issue remains.

### ORDER

Accordingly, upon all the files, records, and proceedings herein,

IT IS ORDERED that plaintiffs' motion for determination that the making of the termination assessment was unreasonable and that the amount of the assessment was inappropriate is denied.

IT IS FURTHER ORDERED that defendant United States' motion for determination that the termination assessment was reasonable and that the amount of the assessment was appropriate is granted.

IT IS FURTHER ORDERED that plaintiffs' and defendant's motions for summary

judgment on the issue of the priority of the tax lien is denied.