John E. STRAUSER, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 82 C 675.

United States District Court,
N. D. Illinois, E. D.

Feb. 25, 1982.

James I. Marcus, Williams & Marcus, Chicago, Ill., for plaintiff.

D. Patrick Mullarkey, James K. Wilkens, Dept. of Justice, Washington, D. C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SHADUR, District Judge.

John E. Strauser ("Strauser") sues the United States under 26 U.S.C. § 7429 ("Section 7429") for judicial review of a termination assessment of income taxes against Strauser by the Secretary of the Treasury (the "Secretary"). This Court has conducted a hearing on the expedited schedule required under Section 7429. After considering all the evidence and the submissions of the parties by their counsel, in accordance with Fed.R.Civ.P. ("Rule") 52(a) the Court finds the facts and states its conclusions of law as follows:

### Section 7429

Since 1977 Section 7429 has provided for non-reviewable District Court proceedings dealing with jeopardy and termination assessments under the Internal Revenue Code (the "Code").[1] It requires the taxpayer first to request administrative review of the proposed assessment by filing a protest with the Secretary. Strauser did that. Section 7429 then authorizes judicial action to be brought, mandating a speedy decision.

Section 7429(b)(2) provides this Court with narrow criteria for review of the Secretary's action:

(1) This Court must first determine whether the Secretary's action in making *any* assessment "is reasonable under the circumstances." On that score Section 7429(g)(1) places the burden of proof on the government.

(2) If the first question is answered "yes," the Court must decide whether the amount assessed "is appropriate under the circumstances." On that issue Section 7429(g)(2) imposes the burden of proof on Strauser.

Each determination is made *de novo*, independent of that by the Secretary. S.Rep.No. 94–938, 94th Cong. 2d Sess. 364 (1976), U.S.Code Cong. & Admin.News 1976, p. 2897 (hereafter cited "Report").[2]

Neither issue to be decided by this Court implicates a determination of the ultimate *merits* of Strauser's tax liability if any. Report at 365. If the Court rules in the government's favor Strauser has the right to file suit for refund—hence the congressional decision to make this Court the final voice in reviewing the Secretary's administrative decision.[3]

Both because this action is not one for resolving Strauser's actual tax obligations and because of the extraordinarily expedited timetable,[4] it is not surprising that the

---

1. Jeopardy assessments come under Code § 6861, while termination assessments come under Code § 6851. Conceptually they are identical, dealing with claimed emergency situations in which the normal delays in conventional tax collection efforts would prejudice the fisc. However a jeopardy assessment is brought after the due date for a completed tax year, while a termination assessment involves a premature termination of the tax year (as was done here) or action on a completed tax year before the return is due.

2. Section 7429 was part of the Tax Reform Act of 1976, a massive effort ultimately involving the Joint Committee on Taxation. With respect to Section 7429, the Report conforms to the final enactment in all relevant respects and is therefore definitive. Although the government's memorandum has cited the General Explanation of the Tax Reform Act of 1976 (and

that report contains virtually identical quotations, albeit with a different pagination), that explanation was a product of the *staff* of the Joint Committee on Taxation, and its letter of transmittal states, "It has not been reviewed by the tax committees and therefore only reflects the staff's views as to the intent of Congress." Accordingly this opinion will cite only to the Report.

3. Of course the decision can have enormous practical consequences, as in this case. Strauser however challenges neither the validity nor the wisdom of the statutory framework.

4. Section 7429(b)(2) obligates the Court to decide the case within 20 days after it is *filed* (Section 7429(c) allows the taxpayer not the government to extend that deadline by no more than 40 days). Where as here the government

statute and case law require considerably less than the usual judicial evidentiary criteria. At the Secretary's level he can rely upon "information" that need not comport with the strict rules of evidence. *See Patrick v. United States*, 524 F.2d 1109 (7th Cir. 1975). By the same token Section 7429(b)(2) requires this Court to review the "information" (Section 7429(a)(1)) upon which the Secretary relied in making the assessment. Expedited proceedings under the statute have permitted affidavit or other summary presentation. As examples of the numerous cases so holding, *see, McAvoy v. United States*, 475 F.Supp. 297, 299 (W.D. Mich.1979); *Loretto v. United States*, 440 F.Supp. 1168, 1171 (E.D.Pa.1977).

So much for general background of the statute under which this Court operates here. This opinion will turn to the facts, then return to the legal principles applicable to those facts.

### *Facts*

On December 4, 1981 the Secretary terminated Strauser's taxable year prematurely as of October 31, 1981 and made a termination assessment of $154,156.26 for the ten-month taxable year ended that date. At that time he[5] had the following information about Strauser and his activities:[6]

(1) Strauser, a young man of about 25, had been engaged in lucrative illegal activities involving marijuana and other drugs. He was arrested October 27, 1981, and felony charges were brought against him by the State of Illinois after he had been observed participating in an apparent sale of a quantity of marijuana. Af-

ter his arrest the United States Drug Enforcement Agency ("DEA") was informed Strauser was also dealing cocaine.

(2) Based on the ongoing surveillance of Strauser's activities, the sale of the illicit drugs was connected to several safe deposit boxes, including Burbank State Bank No. 427 in the names of his mother (Sandra H. Strauser) and 18-year old sister (Sandra A. Strauser), on which Strauser was also an authorized signatory. Upon a showing of probable cause a search warrant was issued with respect to Burbank State Bank Box No. 427 and other safe deposit boxes.

(3) On October 29, 1981, the day before the search, Box No. 427 and several other boxes were closed and a number of new boxes (two at the Burbank State Bank and two at the Bank of Hickory Hills) were contemporaneously opened in the names of Strauser's mother and sister. When the newly-opened boxes were searched, the two at the Burbank State Bank (Nos. 411 and 416) disclosed over $196,000 in cash and over $42,000 in three certificates of deposit. When questioned about those boxes Strauser's mother and sister refused to answer until after they had communicated with their attorney. Their attorney later stated that neither would make any statements to law enforcement agents until after Strauser's trial.

(4) Access records to Burbank State Bank Box No. 427 disclosed that the only person to have visited the box from the beginning had been Strauser. It was never visited by Strauser's mother, and

---

had no knowledge of the filing for ten days, and the matter was not brought to the Court's attention by Strauser's counsel for the same period, the difficulties of adhering to the required schedule are extraordinary. This Court, confronted with back-to-back criminal trials subject to the Speedy Trial Act and an obligation to sit with the Court of Appeals, had to schedule the hearing at 5 p.m. the twentieth day—following the arguments and conference in the six cases in the Seventh Circuit. Strauser has acceded to a week's extension to permit this decision to be rendered.

**5.** This opinion will follow the statutory framework in attributing knowledge and action to the Secretary himself. Of course all the activity reflected in the discussion was carried on by his subordinates in the Internal Revenue Service ("IRS"), delegated to carry out the termination assessment functions. All applicable IRS procedures, including the required multiple-level review, were followed meticulously.

**6.** Nothing in this statement of "facts" implies findings to that effect by the Court. Rather the recital states as "facts" matters as to which the Secretary had information on which he could reasonably rely.

Strauser's sister visited only once—October 29, 1981, the day the box was closed and the new boxes were opened.

(5) Burbank State Bank vault custodian Judith DeWaters told both the DEA and the IRS that Strauser had visited that box about 60 times between its original opening in 1978 and its 1981 closing, and that about every other visit he would ask Ms. DeWaters for stacks of $1,000 and $2,000 money straps (used to package currency).

(6) Strauser also refused to give the IRS any information regarding the safe deposit boxes or any other relevant matters.

*Reasonableness of the Secretary's Action*

When Congress added Section 7429 to the Code to provide a clear procedure for dealing with jeopardy and termination assessments, the Report at 365 n.6 referred to the government's burden of proof on reasonableness and specifically stated:

> The committee believes that the general standards set forth in the Internal Revenue Manual relating to the conditions which must exist before a jeopardy or termination assessment is made are reasonable.

Those standards (*id.* at 360 n.1) included one plainly applicable to this case (emphasis added):

> The taxpayer is *or appears to be* designing quickly to place his property beyond the reach of the Government either by removing it from the United States, or by concealing it, or by transferring it to other persons, or by dissipating it....

There are a great many District Court cases (cited in the government's memorandum) that give the taxpayer short shrift indeed on a kind of "bad man" theory of the law. They sometimes uphold jeopardy or termination assessments essentially because the taxpayer is known to be, or suspected of being, in the business of selling or distributing illegal drugs. This Court need not go that far, for the nature of Strauser's alleged illegal activity simply makes the other factors present in this case even more compelling on grounds of reasonableness.

Strauser's memorandum of law treats the case as though it were a chain of custody criminal prosecution, with the government having the burden beyond a reasonable doubt to trace the funds to Strauser. But Strauser will have ample opportunity to try his ultimate liability in a full-dress hearing, with every protection the law affords. For the present reasonable inferences are enough, and neither the Secretary nor this Court is required to be an ostrich. Surely the reasonable inferences are sufficient to tie Strauser to the secreted funds, and this opinion proceeds on that predicate (discussed in greater detail in the following section).

Strauser's actions in (1) maintaining such a large hoard of currency, (2) keeping those funds in a safe-deposit box in the first place (a somewhat extraordinary measure in these days of high yields), (3) maintaining those funds in a safe-deposit box to which he had access, to which he availed himself of such access on a regular basis, and to which his sister and mother (the nominal owners) never availed themselves of such access, and (4) obviously shifting the funds to two newly-opened boxes in the names of his sister and mother—one step ahead of the government's search warrant of the first safe-deposit box—created much more than the necessary prima facie case for the government's decision to protect itself by a termination assessment. When two more elements are added to the equation—the imminence of pending criminal charges and the possibility of payment, or assignment of substantial assets, to take care of legal fees—the government's decision was further reinforced.

■ Strauser has not countered with anything other than his unduly restrictive view of the nature of this proceeding.[7]

---

7. Strauser's brother Lawrence testified that his mother had sold the family residence October 28, 1981 ("coincidentally" two days before the search warrants were to be executed, and the day before the sleight-of-hand activities with the opening and closing of boxes). Lawrence

That cannot overcome the government's facially sufficient showing. There is no need to string citations in support of the Court's determination (though the government has done so in its memorandum). This Court concludes that the Secretary's action was in Section 7429 terms "reasonable under the circumstances."

### Appropriateness of the Assessment

IRS records reflected that neither Strauser's sister nor his mother had filed income tax returns since at least 1970.[8] That information supported the Secretary's inference as to the ownership of the safe deposit box contents (bearing on the "reasonableness" issue) and also the taxability of those contents to Strauser (part of the "appropriateness" issue). Both conclusions were buttressed by the fact that after seizure of the newly-opened box Strauser's sister and mother refused to discuss the subject until they could communicate with their attorney. In turn, the attorney said that neither of them would make any statements to law enforcement agents until after Strauser's trial.

■ In summary those facts and the other facts already discussed supported as reasonable a determination by the Secretary that the secreted funds in fact belonged to Strauser rather than his sister or mother.

When those facts were coupled with other critical evidence from IRS records—that Strauser himself filed no 1978 income tax return, while in each of 1979 and 1980 his returns reflected less than $2,000 in taxable income—they supported the appropriateness of the determination that the secreted currency, one certificate of deposit and the 1981 interest on all three certificates were not explained by Strauser's prior reported income or non-taxable sources and were thus taxable in 1981.[9] In contrast, the Secretary's determination was *inappropriate* only as to two of the certificates of deposit, which were shown during the hearing to have antedated 1981.

■ As for the appropriate rate of taxation, Strauser's counsel has cited *Giles v. United States*, 80-2 USTC ¶ 9546 (M.D.Fla. 1980) to argue that the 50% maximum tax rate on personal service income should apply to the 1981 income. With all respect the Court must disagree with *Giles*.[10] If Strauser is in fact a drug dealer (a reasonable inference from the "information" available to the Secretary), he is selling ·goods not services. There is no occasion for application of the 50% maximum tax rate.[11]

Strauser's attempted reliance on other case law is wholly misplaced. In each of those cases the income was generated from

did not recall the amount of the house sale. Presumably this testimony was intended to create a doubt as to the source of the $196,000 in currency. Even if the Court were to credit the testimony—a severe strain on its credulity—the test is not "beyond a reasonable doubt," but whether the *Secretary* was reasonable in attributing the funds to Strauser. On this there can only be one conclusion. Indeed such other facts as Strauser's frequent access to Box 427, his frequent requests for money wrappers and Lawrence's testimony disclosing a family in troubled financial circumstances all negate the implication Strauser seeks to create.

8. Strauser's accountant witness testified to facts indicating the possibility of joint returns by the mother and father in 1977–80. But Lawrence Strauser portrayed the father as judgment-ridden, with unpaid loans and credit rejections, and with no bank account since at least 1970. Nor had the mother had a bank account for many years.

9. It is possible that Strauser's frequent box visits and requests for money straps would indicate some pre-1981 funds. But the IRS had no information—and Strauser refused to discuss the subject—about the visits, which could just as well have involved cash withdrawals as well as deposits. It was not unreasonable for the Secretary to attribute all the funds to 1981 (taking Strauser's tax return history into account, among other factors). Given Strauser's refusal to provide any information, the determination that all the funds represented taxable rather than non-taxable sources was similarly reasonable.

10. *Accord, Ruth v. Commissioner*, 81-1 USTC ¶ 9421 (M.D.Fla.1981), also declining to follow *Giles* in a termination assessment case.

11. $3,304 of the income attributed to Strauser appeared to represent wages. That amount of "personal service taxable income" does not trigger a maximum tax calculation.

**962**

personal labor either entirely, *Robida v. Commissioner*, 460 F.2d 1172 (9th Cir. 1972) (taxpayer applied special skill to manipulate high payoffs from slot machines), or substantially: *Holland v. Commissioner*, 622 F.2d 95 (4th Cir. 1980) (maintenance contractor); *Novikoff v. Commissioner*, 40 T.C.M. 1039 (1980) (movie theatre business); *Moore v. Commissioner*, 71 T.C. 533 (1979) (retail grocery business); *United States v. Korczynski*, 78–2 USTC ¶ 9638 (S.D.Ohio 1978) (electrical contractor). There is nothing in the record here to compel the conclusion that any finite part of Strauser's 1981 income was attributable to his services. If it was in fact, he is free to assert that fact in the ultimate trial of his income tax liability.

Thus the only adjustment required in the Secretary's determination is to exclude the two certificates of deposit (including pre-1981 accrued interest from 1981 income). With that correction the "appropriate" assessment becomes $130,139.81. Again it is not for this Court to determine whether that amount of 1981 tax liability is ultimately provable against Strauser. Under the Code Strauser is fully protected against error in that respect. But the threshold issue of appropriateness must be decided in the government's favor.

### Conclusion

Accordingly the order of this Court is that the Secretary's proposed assessment is abated to the extent of $24,016.45. In all other respects Strauser's Complaint is dismissed.