Anthony J. PETERS, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 83–C–762.

United States District Court,
E.D. Wisconsin.

Aug. 22, 1983.

Stanley P. Gimbel, Gimbel, Gimbel & Reilly, Milwaukee, Wis., for plaintiff.

Mark Nebergall, Trial Atty., U.S. Dept. of Justice, Washington, D.C., for defendant.

## DECISION and ORDER

TERENCE T. EVANS, District Judge.

On April 28, 1983, the Internal Revenue Service made a jeopardy assessment, authorized by § 6861(a) of the Internal Revenue Code, against the plaintiff Anthony J. Peters. Peters was assessed taxes, penalties and interest for 1981 and 1982. The assessments included $123,350.62 in taxes, $61,675.31 in fraud penalties, and $25,-052.81 in interest for 1981, and $850,256.05 in taxes, $425,128.02 in fraud penalties, and $4,858.06 in interest for 1982. At Peters' request, the District Director of the Internal Revenue Service has reviewed the assessment in accordance with 26 U.S.C. § 7429(a)(2). The assessment was upheld. This suit, seeking a summary judicial review of the jeopardy assessment, was filed on June 10, 1983. After a hearing on June 29, 1983, the matter was taken under advisement.

█ The procedure for judicial review of a jeopardy assessment is set out in § 7429(b)(2) of the Internal Revenue Code: I must first determine whether the *making* of the assessment "is reasonable under the circumstances ...". If I find that it is, I must then decide whether the *amount* assessed "is appropriate under the circumstances ..." The burden of satisfying the first consideration is on the government; the burden of challenging the second falls on Mr. Peters.

## I.

█ After a review and consideration of the testimony, documents and affidavits submitted by the parties, I believe that the decision to make a jeopardy tax assessment against Peters was "reasonable under the circumstances."

A jeopardy assessment is "reasonable under the circumstances" if any of these three conditions are present:

(1) The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself;

(2) the taxpayer is or appears to be designing quickly to place his property beyond the reach of the Government either by removing it from the United States, or by concealing it, or by transferring it to other persons, or by dissipating it; or

(3) the taxpayer's financial solvency appears to be in peril.

Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, H.R. Doc. No. 10612, 94th Cong., 2d Sess., 361, n. 1, and 536, n. 1 (1976). Congress has noted its approval of these conditions. *See* S.Rep. No. 94–938 (Part II), 94th Cong., 2d Sess., 360, n. 1, and 365, n. 6 (1976), U.S. Code Cong. & Admin.News, p. 2897.

The evidence here establishes that conditions (1) and (2) are present, thus the assessment is "reasonable under the circumstances."

Peters is 26 years old and single. He was indicted by a federal grand jury sitting here on April 26, 1983. He was arrested on April 27, 1983, and charged with 14 counts relating to his alleged involvement in a sophisticated cocaine distribution operation. In all, Peters faces a maximum of 164 years in prison and fines of $400,000.00.

A government informant has reported that Peters said he would leave the country when and if he was indicted. He has, earlier this year, traveled to Rio de Janeiro, Brazil. During a search of his residence, Peters' passport was found in a brief case. These facts, reasonably believed and relied on, satisfy the first condition.

The second condition is satisfied by the information supplied in the affidavit supporting a search warrant issued for Peters' residence. The IRS, in making a jeopardy assessment, may rely on reasonable inferences drawn from information such as this. *See Patrick v. United States*, 524 F.2d 1109, 1120 (7th Cir.1975); *Strauser v. United States*, 535 F.Supp. 957 at 960, 49 A.F.T.R.2d 82–953, 954 (N.D.Ill.1982). The affidavit indicates that Peters dealt in large amounts of cash, and that proceeds from drug transactions were converted into valuable gems. Peters argues that these claims fail to show that he is concealing his income. He claims that the cash transactions are accurately reflected in his bank account transactions. He suggests that the gem purchases were legitimate investments.

The affidavit relied on by the government undermines Peters' arguments. It shows that he was earning in excess of one million dollars a year. His bank account, however, does not reflect that kind of income. Furthermore, information in the affidavit reasonably leads to the belief that Peters purchased gems with no other purpose in mind than to conceal illicit income. (See Affidavit of Agent Thomas Stacy at ¶ 7–8).

Under circumstances such as these, it has been held reasonable for the IRS to conclude that the collection of taxes might be in danger. For example, in *Nolan v. United States*, 539 F.Supp. 788 (D.Az. 1982), a jeopardy assessment was upheld where the plaintiff

> had engaged in "profitable illegal activity," including drugs and prostitution. Income tax returns [had] not been filed by Nolan for 1980 although information indicate[d] that he had enough income to require a return to be filed. When arrested in July, police found $22,000 in cash and jewelry estimated by Nolan to be worth $200,000 in Nolan's home.

*Id.* at 790. The *Nolan* court concluded, "It is reasonable to infer that these assets had not been reported to I.R.S. and were being concealed from the government." *Id.* In

*Barry v. United States*, 534 F.Supp. 304, 309 (E.D.Pa.1982), a jeopardy assessment was upheld where the plaintiff

> was earning substantial income from illegal gambling activities and, in light of his prior tax returns, ... was not reporting this income to IRS. Further, it appear[ed] that Barry was converting significant sums of money into precious metals which are easily concealed and are not readily subject to attachment for the purposes of securing payment of tax liability.

*Id.* at 308–309. A similar conclusion was reached in *Rogers v. United States*, 511 F.Supp. 82 (D.Minn.1982). The court wrote:

> The Government has met its burden of showing that the termination assessment was reasonable. The facts set out in Agent Langer's affidavit regarding Roger's apparent means of making a living, the large amount of cash he had access to, and his past failure to file income tax returns indicates that it was reasonable for the IRS to conclude that termination proceedings were necessary.

*Id.* at 84.

The circumstances here, compared with those presented in the cited cases, compels the conclusion that the making of the jeopardy assessment against Mr. Peters was reasonable under the circumstances.

## II.

Having decided that the issuance of the jeopardy assessment against Peters was reasonable, I turn to the second question; was the amount of the jeopardy assessment appropriate? I find that the determination of the amount of tax due for both 1981 and 1982 was reasonable. However, I believe that the decision to assess additional penalties for fraud pursuant to § 6653(b) cannot stand. Consequently, the fraud penalties plus a proportion of the amount of interest assessed must be abated.

The decision whether to uphold the amount of the assessment is made in light of two basic principles. First, the burden

of demonstrating that the amount of the assessment is unreasonable falls on the plaintiff. Second, as long as the amount assessed is reasonably accurate, it will be upheld. *Homan Mfg. Co. v. Long,* 242 F.2d 645, 650 (7th Cir.1957).

█ The major point of dispute with regard to the amount of the assessment is whether the calculation of Peters' net worth should have included an alleged purchase of gems worth $1,350,000. Peters contends that he purchased emeralds in 1982 for $38,500. The government, on the other hand, contends that he paid an amount approximate to the "fair market value" of the gems. It is true, of course, that one need not pay "fair market value" in order to purchase goods. However, Peters has not, to my satisfaction, carried his burden of showing that in 1982 he expended less than $1,350,000 for gems. The receipt submitted in proof of the amount Peters paid for the gems in question shows a purchase price of $38,500. The receipt, however, also describes the gems as having an appraised value of more than two million dollars. No testimony was offered as to what peculiar circumstances would have forced the seller to offer such an incredible deal. Incredible is the word, indeed, since expert testimony offered by the government showed that, even under duress conditions, it would be unreasonable to pay less than 10 to 25% of full value for gems such as these. Moreover, gem appraisal records discovered pursuant to a search warrant and information obtained from credit reporting firms indicate that Peters may well have purchased other gems, which would raise the appraised value of his collection to as high as $7,500,000.

Peters argues that the government's calculations were erroneous in other ways as well. It appears that the government did miscalculate by $11,000 the amount of money expended as a downpayment for condominium property purchased here in Milwaukee. Also, it is questionable whether a $6,364 stock sale was taxable. As for errors asserted with respect to the purchase of automobiles, other stock, or other condo-

minium property, Peters has failed to carry his burden of proof. Very little or no evidence was offered to contest the allegations set forth in the government's affidavit, upon which the Service relied in computing its assessment. Even if all of these alleged errors were true, the miscalculation of the amount of tax due would not be large enough to render the assessment inappropriate. This is true especially in light of the fact that, within two months of the original calculation of Peters' liability, his net worth was recalculated and his tax liability was redetermined to be more than $200,000 greater for the tax year 1981, and almost a million dollars greater for the tax year 1982. *See,* Notice of Deficiency, dated June 24, 1983. *See also McAvoy v. Internal Revenue Service,* 475 F.Supp. 297, 298 (W.D.Mich.1979). The jeopardy assessment, as to the amount of tax owed, is upheld.

█ The decision to assess an additional penalty for fraud, as I have stated, cannot stand. Section 6653(b) of the Internal Revenue Code gives the Secretary authority to assess a penalty "if any part of any underpayment of tax required to be shown on a return is due to fraud." A fraud penalty is appropriate where the taxpayer intended to evade a tax he believed to be owing to the government. *Loftin and Woodard, Inc. v. United States,* 577 F.2d 1206, 1236 (5th Cir.1978).

Peters applied for a number of extensions to file his 1981 and 1982 tax returns. On the filings, he noted that he was under investigation by the IRS and that his records were in the hands of his attorneys. These acts mitigate against a finding at this stage of the proceeding that Peters intended to evade taxes he knew to be owing. The government argues that the penalty was justified because Peters had a large amount of unreported income from his involvement in cocaine distribution. (Affidavit of Agent Robert Surprenant at ¶ 5.) While this may be true, I cannot and do not find, at this stage of the proceedings, that he intended to defraud the government. Furthermore, Peters paid,

over the course of 15 months, more than $50,000 in estimated taxes. Thus, I find the fraud penalties to have been improperly invoked.

IT IS THEREFORE ORDERED that the amount of the jeopardy assessment against Anthony Peters which constitutes a civil fraud penalty, and the interest assessed thereto, be abated. As to all other challenges, the objections of Mr. Peters are overruled.